UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES** | **:** | **CRIMINAL NO. 3:10 CR 00060 (VLB)** |
| **V.** | **:** | |
| **JOSEPH CASSETTI** | **:** | **MAY 31, 2011** |

**MEMORANDUM IN AID OF SENTENCING**

The defendant, Joseph Cassetti, respectfully submits this Sentencing Memorandum for the Court's consideration in connection with his sentencing hearing scheduled for Thursday, June 23, 2011 at 10:00 a.m. Part I of this memorandum presents a detailed background of Mr. Cassetti's life and the charge to which he has pled guilty. Part II discusses the post-*Booker* sentencing scheme. Part III concerns the calculation of Cassetti's advisory Sentencing Guideline range. Party IV articulates the relevant 18 U.S.C. §3553(a) factors the Court must consider in imposing a just but sufficient sentence.

**I:**     **Defendant's Background**

Cassetti was born on December 14, 1949. He was raised along with two brothers in his family's home in Ansonia, CT. When he was 10-years-old, he started earning money working as a caddy at a nearby country club. At ages 14-

1

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW
52 TRUMBULL STREET  P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

16, he worked at a bakery where he baked and cleaned. At 17, Cassetti worked at a men's clothing store.

Tragically, two months before Cassetti graduated from high school, his father died from pancreatic cancer. Cassetti was 17-years-old and his father was 42-years-old at the time. Being the oldest sibling, Cassetti took on the role of a father-figure in the household. He helped his mother at every opportunity and helped to raise his brothers. In light of the needs of his family after his father's death, Cassetti chose to not pursue a career in the armed services despite his desire to do so.

After high school, Cassetti took classes intermittently at Waterbury State Technical College and became a canine officer for the City of Ansonia. In 1974, he married Judy Pokrywka and adopted her son, Charles. The next year, Cassetti had a daughter, Kara Cassetti. In the early years of this marriage, Cassetti worked in a dental lab making false teeth, at Oxford Airport managing line services, and performed with his band, The Cross Brothers. In 1980, he began working at Sikorsky Aircraft, where he worked for 26 years until he was prevented from working due to his disability. In addition to working at Sikorsky airport, Cassetti also served as a patrolman for the City of Seymour Police

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

**Department for 10 years (1986-1996) and alderman for City of Ansonia for 10 years (1997-2007).**

**After over twenty years of marriage, Cassetti divorced his first wife. In 2001, he married his current wife, Joyce Bolagach, and became a stepfather to Joyce's two daughters. He also now has two grandchildren – Charlie, who is 11-years-old, and Jacqueline, who is 4-years-old. Notwithstanding his retirement and family obligations, Cassetti obtained a Bachelor of Science degree in General Studies from Bridgeport University in 2002.**

**Unfortunately, Cassetti has struggled with substance and alcohol abuse since his youth. He first started using alcohol (whiskey) and marijuana at age 18. At approximately age 43 when Cassetti was going through his divorce, he took his substance abuse to another level and began using cocaine. In 1996, Cassetti stopped using cocaine but relapsed in 2004. He began accepting drugs for rent payment on property he owned because of his need to "get high." By 2008 when he became involved in the conspiracy leading to the conviction in this matter, Cassetti was freebasing cocaine and taking 6-8 pills of Vicodin and Tylenol with**

3

**Codeine on a <u>daily</u> basis.[1]  Presently, Cassetti is clean and sober.  He stopped using alcohol and drugs in December 2008 and now participates in NA/AA meetings and works with his sponsor to remain sober.**

**Cassetti also has a history of serious medical conditions – the most serious being a diagnosis of bladder cancer in 2006.  He underwent surgery resulting in the removal of two tumors and received chemotherapy at Griffin Hospital.  The cancer is presently in remission but Cassetti is closely monitored by his doctor (Dr. Arnold Rivera) in light of his family's cancer history.  Cassetti has also been diagnosed with spondylolisthesis,[2] degenerative disc disease, hypertension, and hyperlipidemia.  Cassetti's medical conditions led to him retiring on disability in 2006.**

**In November 2008, law enforcement executed search and seizure warrants for properties connected to Cassetti.  The searches revealed an indoor marijuana grow operation.  A total of 1,477 marijuana plants were seized.  Thereafter, Cassetti was arrested.  On December 6, 2010, Cassetti pled guilty to conspiracy**

---

[1] *See* **Report of Substance Dependency and Psychological Evaluation dated 9/29/09.  Said report is being filed along with a motion to seal.**
[2] **Spondylolisthesis is a condition of the spine in which a vertebra has slipped forward on the vertebra below.**

4

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

**to manufacture/possess with the intent to distribute 1,000 or more marijuana plants in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(vii) and §846.**

**II.     Post-*Booker* Sentencing Analysis**

**Since 2005, the United States Supreme Court has consistently stated that the Sentencing Guidelines are advisory only, and, therefore, that a district court must consider all of the factors set forth in 18 U.S.C. §3553(a) in a holistic manner.  See *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007), *United States v. Booker*, 543 U.S. 220 (2005). Certainly the Guidelines remain "the starting point and initial benchmark" for the sentencing court, yet the court "may not presume that the Guidelines range is reasonable."  *Gall*, *supra*, at 49.  The Guidelines range is only one of the many factors to be weighed when selecting a disposition that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in 18 U.S.C. §3553(a).[3]  *Id*. at 49-50.  In this regard, it is significant that the Court is no longer hemmed in by the traditional Guidelines departure analysis required under *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  See *United States v. Brown*,**

---

[3] **The goals of sentencing are just punishment, specific and general deterrence, and to provide needed educational, vocational, medical care or other correctional treatment in the most effective manner.  See 18 U.S.C. §3553(a).**

5

**514 F.3d 256 (2d Cir. 2008). The primary objective for this as any sentencing is to "make an individualized assessment based on the facts presented."** *Gall*, *supra*, **at 597.**

**Although each factor of §3553(a) must be considered, a district court must not engage in a mathematical, isolated calculation of each factor. Rather, the Supreme Court "has emphasized that section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle."** *United States v. Rodriguez*, **527 F.3d 221, 228 (1st Cir. 2008). That tenet, the parsimony principle, instructs district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. §3553(a). "In the final analysis, then, the gloss supplied by** *Kimbrough* **signifies that a district could should not evaluate a request for a variant sentence piecemeal, examining each section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing."** *Rodriguez*, **527 F.3d at 228. "This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts."** *Id*. **In other words, if the Court**

6

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

believes that a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence.  *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

Accordingly, when fashioning a sentence, the district court should consider the applicable Guidelines range, as well as the following factors:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –
    (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (b) to afford adequate deterrence to criminal conduct;
    (c) to protect the public from further crimes of the defendant; and
    (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available; and

4. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*See* 18 U.S.C. §3553(a).  "[I]f a specific sentencing rationale cannot be considered under the aegis of a particular sub-part of section 3553(a), such a proscription does not bar consideration of that factor in the course of a more

7

holistic review of the full panoply of section 3553(a) factors." *Rodriquez*, 527 F.3d at 229.

### III.   Advisory Sentencing Guidelines Calculation

The Probation Office calculated Cassetti's offense level as follows:

| | |
|---|---|
| Base Offense Level | 26 |
| Specific Offense Characteristic | +2 |
| Safety Valve | -2 |
| Acceptance of Responsibility | -3 |
| Total | 23 |

Determining that Cassetti has zero criminal history points, the Probation Office computed a Criminal History Category of I resulting in a Guideline range of 46-57 months.  Cassetti disputes the Probation Office's calculation and submits that downward departures are warranted.

First, all parties (the defendant, Government and Probation) agree with the calculation of the base offense level and the deductions for the safety valve and acceptance of responsibility provisions.  However, the defendant disagrees with the two-level increase pursuant to Guideline §2D1.1(b)(12)[4] because such was not included in the parties' plea agreement and was not the intent of the plea agreement.  Rather, the defendant and Government did not include the two-level

---

[4] This section was only recently added to the Sentencing Guidelines becoming effective November 1, 2010.

8

increase under §2D1.1(b)(12) and agreed to a total offense level of 21 resulting in a range of 37-46 months.

In *United States v. Fernandez*, 877 F.2d 1138, 1145 (2d Cir. 1989), the Second Circuit authorized district courts to give effect to a plea bargain where there is a discrepancy as to what the defendant expected at the time of his plea and what he faces at sentencing "so long as the sentence that results reflects the seriousness of the crime and deters future misconduct." The defendant maintains that a range of 37-46 months reflects the seriousness of his crime and will deter future misconduct as set forth in more detail below.

Equally important, a downward departure is warranted based on Cassetti's strong employment record,[5] his alcohol and substance abuse history,[6] his age,[7]

---

[5] *See United States v. Big Crow*, 898 F.2d 1326 (8th Cir. 1990) (defendant's excellent employment history took his case outside the heartland of cases and warranted a 13-month downward departure); *United States v. Decora*, 177 F.3d 676 (8th Cir. 1999) (defendant's employment record took his case outside the heartland and warranted a 15-month downward departure); United States v. Thompson, 74 F.Supp.2d 69 (D. Mass. 1999)(departure based on defendant's commitment to family and working hard).

[6] *See United States v. Normandeau*, 63 Fed. Appx. 573 (2d Cir. 2003) (downward departure proper in light of evidence that defendant successfully completed drug treatment program and defendant volunteered in community).

[7] The length of time that a defendant has led a crime-free life warrants a downward departure. *United States v. Ward*, 814 F.Supp. 23 (E.D.Va. 1993).

9

his family history,[8] and his medical condition,[9] which take this case outside the "heartland." *Koon v. United States*, 518 U.S. 81, 93 (1996). At the very least, a downward departure is warranted in this case based on a combination of all the factors discussed in this memorandum. U.S.S.G §5K2.0; *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996).

Also, a downward departure is warranted based on his substantial assistance to authorities pursuant to §5K1.1. The defendant anticipates that the Government will be filing an appropriate motion in this regard for the Court to consider.

## IV. Non-Guideline Sentence is Warranted

The sentence called for by the guidelines under the PSR calculation is greater than necessary to satisfy the purposes of sentencing set forth in §3553(a).

---

[8] *United States v. Big Crow*, 898 F.2d 1326 (8th Cir. 1990) (departure was warranted based on the defendant's efforts to overcome the adverse living conditions). *See also United States v. Deigert*, 916 F.2d 916, 918-919 (4th Cir. 1990) (consideration of defendant's tragic personal background and family history is permissible for purposes of departing downward); *United States v. Decora*, 177 F.3d 676, 677-679 (8th Cir. 1999) (downward departure warranted where defendant faced adverse living conditions).

[9] A defendant's medical condition can support a downward departure. *U.S. v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (court concluded that the defendant's case differed from the heartland of guideline cases due to his medical condition).

10

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

**A sentence below the guideline range is "sufficient, but not greater than necessary" pursuant to 18 U.S.C. §3553(a).**

### A. Nature & Circumstances of the Offense

Cassetti acknowledges the seriousness of his offense. However, it is important to keep in mind that Cassetti was not involved in any violent activity connected to the drug conspiracy. His offense is a non-violent offense. In addition, Cassetti was easily manipulated during the time of the conspiracy due to his dependency on drugs. As indicated above, at the time this conspiracy developed, Cassetti was using crack cocaine and taking 6-8 pills on a daily basis. He was easily influenced and made poor choices as a result - choices Cassetti has no intention of repeating.

### B. History & Characteristics of the Defendant Strongly Favor a Sentence Below the Guidelines Range

Section 3553(a) requires the Court, to the extent possible, take a close examination of who the defendant is apart from the conduct at issue in the case at hand. As set forth in Part I of this memorandum, the PSR, and the letters attached hereto, the defendant is a dedicated and loving father, husband, grandfather, brother and son. He has always been involved in his family's lives

11

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

**and has served in a father-figure role in his family since his own father's premature death.**

**Equally important, Cassetti has focused on stability and hard work all his life. Due to his father's early death, Cassetti entered the workforce at a young age and has worked consistently throughout his life, often juggling more than one job at a time. A variance in light of a defendant's employment record is entirely permissible pursuant to §3553(a).** *United States v. Ranum*, **353 F.Supp.2d 984, 990-991 (E.D. Wis. 2005) (defendant's solid employment history warranted variance below guideline range).** *See also United States v. Jagmohan*, **909 F.2d 61, 65 (2d Cir. 1990) (defendant's gainful employment for nine years coupled with other factors warranted downward departure).**

**Moreover, since Cassetti's legal troubles began, he has taken numerous steps to put his life back on the right course. He has worked hard to become clean and sober with the assistance of NA and AA and his sponsor. He has become more active in his church community[10] and seeks to be a positive influence in the lives of people around him and his family. Cassetti has every**

---

[10] **Please see Letter from Deacon Richard Renker (attached hereto) setting forth how Cassetti has "immersed himself into the life" of the church. Cassetti attends weekly bible study classes, sings in the choir, is a member of the Padre Pio Prayer Group, Catholic Men's Club, and Knights of Columbus.**

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

**intention of maintaining his sobriety so that he does not fall into the trap he fell into leading to this criminal conviction.**

**C.    Goals and Purposes of Sentencing Are Served by a Sentence Below the Guideline Range.**

**Section 3553(a) requires the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

**A sentence below the Guidelines range will not lead to under-punishing Cassetti.  This felony conviction has come with a loss of tremendous rights and precious time with his family.  Cassetti has no intention of returning to his previous criminal conduct and looks forward to returning to his family who will help in deterring Cassetti from returning to such.  *See United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (family ties serve as a tremendous deterrent). Cassetti is ashamed and remorseful for his conduct.  The arrest alone has been enough to motivate Cassetti to transform the manner in which he conducts his life so that he is now a positive contributor to his community.  He is highly**

Lynch, Traub, Keefe and Errante, p. c.   Attorneys at Law
52 Trumbull Street   P.O. Box 1612   New Haven, Connecticut 06506-1612
Telephone (203) 787-0275   Facsimile (203) 782-0278

**involved in his church, cares for his family members, and maintains sobriety. Incarcerating him in the range set forth in the PSR is unnecessary to punish this defendant and protect the public from further crimes because Cassetti has already felt punishment from this charge and committed himself to a clean, sober, and lawful lifestyle.**

**Moreover, Cassetti is 61 years old. Statistics show that as people age, their likelihood of recidivism drops dramatically. According to the U.S. Sentencing Commission, 2008 Datafile, USSCFY08, the age of offenders in drugs during the fiscal year 2008 drops dramatically as a defendant ages. Defendants "over the age of forty … exhibit markedly lower rates of recidivism in comparison to younger defendants."** ***Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*****, at 12, 28 (2004) www.ussc.gov/publicat/Recidivism_General.pdf . A variance in light of the defendant's age is entirely permissible pursuant to §3553(a) and should be made in this case.** ***United States v. Nellum*****, 2005 WL 300073, *3 (N.D. Ind. February 3, 2005).  See also** ***United States v. Ranum*****, 353 F.Supp.2d 984, 990-991 (E.D. Wis. 2005) (variance from the guideline sentence warranted based on defendant's age);** ***United States v. Heldeman*****, 402 F.3d 220, 224 (1st Cir. 2005) (same);** ***United***

14

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

*States v. Ryder*, 414 F.3d 908 (8th Cir. 2005) (same); *United States v. Warhurst*, 132 Fed. Appx. 795 (11th Cir. 2005) (same).

A sentence below the Guidelines range also serves to deter other members of the community. No one could look at Cassetti's situation and conclude that it would be anything but undesirable to pursue the same course of conduct. Being exposed to a lengthy period of incarceration as Cassetti is facing is a significant penalty.

A long period of incarceration is not necessary to protect the public from further crimes of the defendant. As indicated above, the defendant has no intention of re-engaging in the criminal conduct. Also, it is important to note the nonviolent nature of the defendant's conduct. As recognized by the court in *United States v. Haynes*, 557 F.Supp.2d 200, 202-203 (D. Mass. 2008):

> While public safety certainly calls for the incapacitation of some, there is another side to the equation, which, after *United States v. Booker*, 543 U.S. 220 (2005), may finally be given the serious consideration it deserves. The facts presented by [the defendant's] case force the Court to confront the inescapable fact that disadvantaged communities … are injured *both* by crime *and* by the subsequent mass incarceration of their young men. *See* Donald Braman, *Criminal Law and the Pursuit of Equality*, 84 Tex. L. Rev. 2097, 2114-17 (2006). *Compare* Randall Kenney, *Race, Crime, and the Law* 373-76 (1997), *with* Todd R. Clear, I*mprisoning Communities: How Mass Incarceration Makes Disadvantaged Neighborhoods Worse* (2007). Courts may no longer ignore the

15

**possibility that mass incarceration of nonviolent drug offenders has disrupted families and communities and undermined their ability to self-regulate, without necessarily deterring the next generation of young men from committing the same crimes.**

The court further recognized that "while prisoners are obviously not committing crimes in their communities while they are incarcerated, they also are not functioning as parents, workers, consumers, or neighbors." *Id.* at 207.  A sentence under the guidelines range here does not threaten the public.  In fact, Cassetti intends to contribute positively to his family and community once he is released.

In regards to the rehabilitative component of section 3553(a), the court must fashion a sentence that gives the defendant an opportunity to look beyond imprisonment.  For instance, the court in *United States v. Carvajal*, 2005 WL 476125, *6 (S.D.N.Y. February 22, 2005), stated the following:  "Rehabilitation cannot be served if a defendant can look forward to nothing beyond imprisonment.  Hope is the necessary condition of mankind, for we are all created in the image of God.  A judge should be hesitant before sentencing so severely that he destroys all hope and takes away the possibility of useful life.  Punishment should not be more severe than that necessary to satisfy the goals of punishment."  The defendant is open to receiving additional treatment for his

16

**addictions while incarcerated but needs to know that he will also have an opportunity to put his new skills to work in the real world.**

**V.      Conclusion**

For the reasons stated above, Cassetti submits that a sentence below the guidelines range set forth in the PSR is warranted. Cassetti also requests that he be incarcerated in the New England area closest to Connecticut to allow routine visitation with his family members.

Respectfully submitted,

THE DEFENDANT
JOSEPH CASSETTI


By: _____
CHARLES E. TIERNAN, III
Federal Bar No. ct00258
NANCY F. MYERS
Federal Bar No. ct24353
Lynch, Traub, Keefe, & Errante
52 Trumbull Street
New Haven, CT 06510
Phone:  (203) 787-0275
Fax:  (203) 782-0278

17

**CERTIFICATE OF SERVICE**

**I hereby certify that a true and correct copy of the foregoing was mailed the following counsel on May 31, 2011:**

**David X. Sullivan, Esq.
Assistant U.S. Attorney
157 Church Street
P.O. Box 1824
New Haven, CT 06510**

                                       **Charles E. Tiernan, III**

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278